UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #: _____               │
│ DATE FILED: 2-27-08          │
└─────────────────────────────┘
```

-------------------------------------X

In re:

NORTHWEST AIRLINES CORPORATION, et al.,

Debtors.

-------------------------------------X

NORTHWEST AIRLINES, INC.,

                    Plaintiff,

       -against-

CITY OF LOS ANGELES, LOS ANGELES
WORLD AIRPORTS, a department of the
City of Los Angeles; and LOS ANGELES
BOARD of AIRPORT COMMISSIONERS, a
board of The City of Los Angeles,

                    Defendants.

-------------------------------------X

Chapter 11 Case No.

05-17930 (ALG)

Jointly Administered

07 Civ. 2677

OPINION

A P P E A R A N C E S:

**Attorneys for Debtors and Debtors-In-Possession**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
By:  Bruce R. Zirinsky, Esq.
     Gregory M. Petrick, Esq.
          -and-
     Mark C. Ellenberg, Esq.
     1201 F Street N.W., Suite 1100
     Washington, DC  20004

**Attorneys for Defendants**

KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA  90067
By:  Marc S. Cohen, Esq.
     Ashleigh A. Danker, Esq.

**Sweet, D.J.**

The City of Los Angeles (the "City"), including its Department of Airports (also known as the "Los Angeles World Airports" or "LAWA") and its Board of Airport Commissioners (the "BOAC") (herein referred to collectively as the "City" or "Defendants") has moved pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure ("FRBP"), and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New York to withdraw the reference of an adversary proceeding (the "Northwest Action") in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and, pursuant to 28 U.S.C. §§ 1404(a) and 1412 and Fed. R. Bankr. P. 7087, to transfer the proceeding to the United States District Court for the Central District of California ("CDCA"). For the reasons set forth below, the motion is granted.

**Prior Proceedings**

Northwest Airlines Corporation ("Northwest") filed its petition in bankruptcy under Chapter 11 of the

federal Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the
United States Bankruptcy Court for the Southern District of
New York on September 14, 2005.

On August 14, 2006, the City filed a proof of
claim in the Bankruptcy Court.

On March 23, 2007, Northwest filed its Complaint
to commence an adversary proceeding against the City, LAWA
and the BOAC, seeking declaratory and injunctive relief on
the grounds that a lease between Northwest and LAWA is
property of the estate and has been breached by the
Defendants in violation of the automatic stay, that the
acts of the Defendants with respect to the lease are
voidable, and that the lease cannot be terminated or, if
terminated early, is subject to a buy back provision.

On March 30, 2007, the City, LAWA and the BOAC
moved to withdraw the reference of the adversary
proceeding. The motion was opposed by Northwest and was
heard and marked fully submitted on May 9, 2007.

## The Facts and Related Proceedings

The facts are not in dispute, except as noted, and are derived from the judicially-noticed documents and the exhibits submitted by the parties.

The City is the owner of the Los Angeles International Airport ("LAX"). The City operates its airports, including LAX, through LAWA. LAWA is a financially independent, self-sustaining proprietary department of the City, governed by the seven-member BOAC. Members of the BOAC are appointed by the Mayor of Los Angeles and are subject to approval by the City Council.

The City is in the initial phases of implementing the LAX Master Plan (the "Master Plan"), a renovation and upgrading of LAX which involves redevelopment of the terminal area, enhancement of passenger and airport safety and security, modernization of the runway and taxiway system, and improvements in access to the airport. It is expected to take several years to fully implement.

LAX is the fifth largest airport in the world when measured by the number of passengers who pass through

the facility, serving in excess of 60 million passengers annually. It is the primary commercial air transportation hub of the Los Angeles region and has nine passenger terminals. Terminal 5 is subject to a long-term lease, now held by Delta as a result of its merger with Western Air Lines, Inc. Terminal 2 is subject to a long-term lease held by LAX Two Corp. ("LAX Two"). Northwest is a member of LAX Two and, along with the other members of LAX Two, provides passenger arrivals and departures at Terminal 2.

On November 20, 2006, the BOAC formally approved a "New Leasing Policy" for LAX. Pursuant to the New Leasing Policy, the BOAC approved a new lease form with a five-year term (the "New Lease Form") for LAWA's airline tenants, including those at LAX, that allows LAWA to retain greater control over LAX's passenger terminals and gates on an airport-wide basis. The New Lease Form is effective as to all carriers signing new leases with the City for terminal space at LAX on or after February 1, 2007. As to carriers occupying terminal space on or after February 1, 2007 without the benefit of a lease, the BOAC approved a tariff that incorporates the provisions of the New Lease Form, absent the commitment by the City to a five-year term.

On December 18, 2006, the BOAC passed Resolution No. 23169, which sought to recover the maintenance and operating costs of LAX (the "New M&O Rates"). The New M&O Rates are applicable to all nine passenger terminals and collectible from all aeronautical tenants. The New M&O Rates were imposed as of February 1, 2007, but effective retroactive to January 1, 2006. Retroactive billing of maintenance and operations charges occurs each year because the long-term leases are based on LAX's actual costs for maintenance and operations and, therefore, are retroactively billed each year after the final figures for the prior fiscal year become available.

The City is reviewing its long-term leases for termination opportunities and has decided to defease the tax-exempt bonds issued with respect to the Terminal 5 Lease and the Terminal 2 Lease, thereby causing the early termination of those leases. On January 8, 2007, the BOAC formally approved funding of an escrow by the City, subject to appropriate court approval, in an amount not to exceed $55 million, for the purpose of defeasing the bonds issued with respect to Delta's Terminal 5 Lease. At the same time, the BOAC also approved funding of escrows by the

City, subject to court approval, in an amount not to exceed $99 million, for the purpose of defeasing the bonds issued with respect to LAX Two's Terminal 2 Lease. These escrows have been funded.

The City's actions to promote implementation of LAX's Master Plan through the BOAC Resolutions enacted in November and December 2006 and January 2007 give rise to the various causes of action in the instant proceeding and in a similar proceeding before the Honorable Denny Chin with respect to withdrawal of the reference in the Delta bankruptcy, In re Delta Airlines, Inc., No. 07 Civ. 02649 (DC), 2007 U.S. Dist. LEXIS 81216 (S.D.N.Y. Oct. 30, 2007).

Five entities hold long-term leases of passenger terminal space at LAX: Delta Air Lines, Inc. ("Delta"), LAX Two, American Airlines, Inc. ("American"), Continental Airlines, Inc. ("Continental"), and United Air Lines, Inc. ("UAL") (collectively, the "Long-Term Tenants"). The termination provisions of their respective long-term leases with the City are similar, although there are variations in the relevant language of the later-executed long-term leases. For purposes of the dispute regarding the New M&O Rates, the Long-Term Tenants and Northwest are represented

by the same counsel, Robert Span of the Los Angeles office of Paul, Hastings, Janofsky & Walker LLP.

As a result of the recent airport-wide changes involving the City's recovery of its actual costs of operating LAX made to facilitate implementation of the Master Plan, the City is involved in two complex litigation actions, one filed in January 2007 in the United States District Court for the Central District of California (the "California Action") by three of the five Long-Term Tenants at LAX, and the other filed in February 2007 before the Department of Transportation (the "DOT Action") by air carriers without long-term leases.

American, Continental, and UAL commenced the California Action on January 18, 2007 in the CDCA, Case No. 07-0461 DDP. The California Action challenges the New M&O Rates based upon language contained in the plaintiffs' long-term leases that is similar to that in the Northwest lease. The California Action is still in the pre-trial stage.

The adversary proceedings involving Delta and Northwest raise an issue of contract interpretation not

presently contained in the California Action, namely the City's right to defease the underlying bonds and thereby cause a termination of the respective terminal leases. However, this issue may also arise under the City's long-term contracts with American, UAL, and Continental, where the City is also considering early termination opportunities.

The plaintiffs in the DOT Action contend that the City is requiring them to enter into new leases that are more expensive than their expired leases and than the long-term leases from which the Long-Term Tenants still benefit. Northwest, Delta, American, Continental, and UAL have intervened in the DOT Action.

## The Standard for Withdrawal

Withdrawal of the reference from a bankruptcy court is governed by 28 U.S.C. §157(d), which provides, in relevant part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. §157(d).

Section 157(d) does not define the term "cause,"
however, in deciding whether to withdraw an issue from the
bankruptcy court, district courts consider whether the
claim is core or non-core, whether it is legal or
equitable, and considerations of efficiency, prevention of
forum shopping, and uniformity in the administration of
bankruptcy law. Orion Pictures Corp. v. Showtime Networks,
Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d
Cir. 1993), cert. denied, 511 U.S. 1026 (1994). Each of
the potential factors may have substantial importance in a
given case, but none is dispositive. See Mishkin v.
Ageloff, 220 B.R. 784, 799-800 (S.D.N.Y. 1998) (finding
that the Orion court did not intend the core versus non-
core factor to be dispositive); see also Houbigant, Inc. v.
ACB Mercantile, Inc. (In re Houbigant, Inc.), 185 B.R. 680,
686 (S.D.N.Y. 1995) (stating that the core versus non-core
distinction is not "wholly determinative").


**The Core/Non-Core Decision is Appropriate for this Court**


Decisions in the Second Circuit are not uniform
on the question of whether the district court should, in
the absence of an initial determination by the bankruptcy

9

court, decide whether a proceeding is core or non-core.
Courts in the majority hold that the district court can
determine, in the first instance, whether a proceeding is
core or non-core. See V.W. Eimicke, Inc. v. Amlicke (In re
VWE Group, Inc.), 359 B.R. 441, 447-48 (S.D.N.Y. 2007)
("Orion's clear language refutes plaintiff's contention
that the core/non-core determination must be made by a
bankruptcy judge.") (collecting cases). Northwest has not
commented on the recent In re The VWE Group, Inc. decision
or the cases cited therein for the proposition that
"[c]ourts of this circuit have held repeatedly that
district courts may determine that nature of the proceeding
in the first instance." Id.

Courts in the minority hold that the bankruptcy
court must decide, in the first instance, whether a matter
is core or non-core, and rely on 28 U.S.C. §157(b)(3),
which provides, in relevant part:  "The bankruptcy judge
shall determine, on the judge's own motion or on a timely
motion of a party, whether a proceeding is a core
proceeding under this subsection or is a proceeding that is
otherwise related to a case under title 11." 28 U.S.C. §
157(b)(3). See Official Committee of Unsecured Creditors
of Verestar, Inc. v. American Tower Corp., No. 05 Civ. 6268

(RPP), 2005 WL 3455775, at *2-3 (S.D.N.Y. Dec. 15, 2005)
(finding a motion to withdraw the reference premature when
the bankruptcy court had not first determined whether the
adversary proceeding was core or non-core).

Here, what the movants term the "majority rule"
will be applied.  It is appropriate in the instant case
that this Court make the core/non-core determination, as
the Bankruptcy Court has not been asked to consider the
Terminal 2 Lease and, accordingly, has no prior familiarity
with the terms of the lease or the substance of the
Northwest proceeding.  There are, therefore, no judicial
economies to be realized from having the Bankruptcy Court
make the core/non-core determination in the first instance.

**The Adversary Proceeding is Non-Core**

With respect to non-core proceedings, unless the
parties agree otherwise, the bankruptcy court can only
recommend findings of fact and conclusions of law to the
district court.  U.S. Lines, Inc. v. American Steamship
Owners Mutual Protection and Indemnity Ass'n, Inc. (In re
U.S. Lines, Inc.), 197 F.3d 631, 636 (2d Cir. 1999).  The
bankruptcy court's proposed findings of fact and

11

conclusions of law are subject to de novo review by the
district court.  Orion, 4 F.3d at 1101.


This adversary proceeding is a contract action
asserting claims arising out of:  (i) the City's purported
breach of the terminal leases as a result of the setting of
the New M&O Rates and (ii) the City's interpretation of the
termination provisions of the leases.


The determination of whether a contract action is
a core proceeding requires consideration of "(1) whether
the contract is antecedent to the reorganization petition;
and (2) the degree to which the proceeding is independent
of the reorganization."  Universal Ltd. v. Allfirst Bank
(In re Millenium Seacarriers, Inc.), 419 F.3d 83, 97 (2d
Cir. 2005) (quoting U.S. Lines, 197 F.3d at 637).  The
latter inquiry depends on the "nature of the proceeding."
Id. (quoting S.G. Phillips Constructors, Inc. v. City of
Burlington (In re S.G. Phillips Constructors, Inc.), 45
F.3d 702, 705 (2d Cir. 1995)).  A proceeding can be core in
nature "if either (1) the type of proceeding is unique to
or uniquely affected by the bankruptcy proceeding, or (2)
the proceeding directly affects a core bankruptcy
function."  Id.  "[C]ontract claims are not rendered core

simply because they involve property of the estate." U.S.
Lines, 197 F.3 at 637 (quoting Orion, 4 F.3d at 1102); see
also Enron Power Marketing, Inc. v. City of Santa Clara (In
re Enron Power Marketing, Inc.), No. 01 Civ. 7964 (HB),
2003 WL 68036, at *9 (S.D.N.Y. Jan. 8, 2003) (finding
causes of action that are "essentially contract claims
dressed up as bankruptcy claims" to be non-core for
purposes of motion to withdraw the reference).

Here, the Terminal 2 Lease is antecedent to the
petitions filed by Northwest on September 14, 2005.  The
Terminal 2 Lease was executed as of December 16, 1985.  In
addition, the causes of action arose wholly independently
of the bankruptcy proceedings, are not unique to or
uniquely affected by the bankruptcy proceedings, and do not
directly affect a core bankruptcy function.  Indeed,
similar causes of action of arising out the same core group
of facts and similar contractual language exist with
respect to the City's long-term leases with American,
Continental, and UAL, which are not in bankruptcy.  The
Bankruptcy Court has no prior familiarity with the long-
term leases or the extensive history leading to the dispute
between the City and several of LAX's tenants.

Although the claims asserted under the Terminal 2
Leases arose post-petition, that fact does not render the
adversary proceedings core proceedings. See Luan Inv.,
S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304
F.3d 223, 229 (2d Cir. 2002) (stating that the fact that a
post-petition dispute regarding a pre-petition contract
could arise outside of the bankruptcy proceedings "weighs
against its core status"). In U.S. Lines, 197 F.3d at 637-
38 (Walker, J., other panel members concurring on other
grounds), the Second Circuit wrote:

> [T]he critical question in determining whether a
> contractual dispute is core by virtue of timing
> is not whether the cause of action accrued post-
> petition, but whether the contract was formed
> post-petition. . . . But a dispute arising from
> a pre-petition contract will usually not be
> rendered core simply because the cause of action
> could only arise post-petition. In Orion, for
> example, we held to be non-core Orion's cause of
> action for anticipatory breach of a pre-petition
> contract . . . even though the event that
> triggered Orion's claim occurred post-petition.
> See In re Orion Pictures Corp., 4 F.3d at 1097,
> 1102; see also McMahon v. Providence Capital
> Enters., Inc. (In re McMahon), 222 B.R. 205, 208
> (S.D.N.Y. 1998).

Furthermore, although Northwest has status
as a "subtenant" of LAX Two under the Terminal 2
Lease, Northwest is not a party to the Terminal 2
Lease. The determination of the Northwest Action does

not involve adjudication of the City's "claims"
against the estate or other core bankruptcy functions.

Northwest has contended that, as a result of the
filing of the City's proof of claim, the Northwest Action
is a core proceeding. A non-core adversary proceeding will
only be transformed into a core proceeding by virtue of the
filing of a proof of claim, however, if (1) the proceeding
"arises out of the same transaction as the creditor's
proofs of claim or setoff claim, or (2) the adjudication of
the adversary proceeding claim would require consideration
of issues raised by the proofs of claim or setoff claim
such that the two claims are logically connected."
Statutory Comm. of Unsecured Creditors on behalf of Iridium
Operating LLC v. Motorola, Inc. (In re Iridium Operating
LLC), 285 B.R. 822, 832 (S.D.N.Y. 2002) (citations
omitted).

Here, the City filed pre-petition proofs of claim
against Northwest which do not arise out of or relate to
the New M&O Rates or the termination provisions of the
leases but refer to charges for leases, landings and
rejection damages. City Ex. 17. The assertion of these
claims by the City does not transform this proceeding into

a core proceeding.  Northwest is not a signatory to the
Terminal 2 Lease, and the City has represented that it
bills LAX Two, the counterparty to the Terminal 2 Lease,
for amounts due thereunder.  The City's proofs of claim,
therefore, do not include amounts owed under the Terminal 2
Lease, nor has Northwest filed a counterclaim to these
proofs of claim.

Northwest has also contended that its
"counterclaims," or its Complaint, affect the City's right
to potentially receive "distributions" from the bankruptcy
estate.  However, the Northwest Action is not an
"objection" or "counterclaim" to the City's proofs of
claim, as the Complaint does not contain any allegations
implicating the City's right to receive distributions from
Northwest's bankruptcy estate, or asserting offset rights
or counterclaims.  Presumably, the City has not billed
Northwest for amounts due under the Terminal 2 Lease which,
as noted above, are billed to and collected from LAX Two.

Northwest has noted that its Complaint seeks a
determination whether the Terminal 2 Lease is property of
Northwest's bankruptcy estate.  However, the principal
thrust of the Complaint is to challenge the City's setting

of the New M&O Rates and the City's right to terminate the
Terminal 2 Lease.  The City has in effect stipulated for
the purpose of the Northwest Action that the Terminal 2
Lease is property of Northwest's bankruptcy estate. City
Reply Mem. at 4.

In the instant case, is appropriate to hold that
the adversary proceeding is non-core.

## Withdrawal is Appropriate

The principal basis for withdrawal results from
the second barrel of the City's motion, its request for a
transfer to the CDCA under 28 U.S.C. § 1404.  To bring the
Northwest Action before Judge Pregerson in the CDCA, the
City first seeks withdrawal of the reference.  Both 28
U.S.C. § 157(d) and Fed. R. Bankr. P. 5011(a) provide that
only the district court may determine a motion to withdraw
the reference.  28 U.S.C. § 157(d) provides, in part:  "The
district court may withdraw, in whole or in part, any case
or proceeding referred under this section, on its own
motion or on timely motion of any party, for cause shown."
Fed. R. Bankr. P. 5011(a) provides:  "A motion for
withdrawal of a case or proceeding shall be heard by a

district judge." Furthermore, pursuant to General Order
No. 266 of the CDCA, all proceedings under Title 11 or
arising in or related to a case under Title 11 are
automatically referred to the Bankruptcy Court of the CDCA.
Accordingly, any transfer of the Northwest Action by Judge
Gropper to the CDCA would be subject to General Order 266.
Determination of the Northwest Action by the Bankruptcy
Court of the CDCA would not promote judicial efficiency.

Since the Bankruptcy Court lacks the authority to
order the specific relief that the City seeks, namely a
transfer of the Northwest Action to the CDCA in a manner
that would not be subject to automatic referral to the
Bankruptcy Court under General Order No. 266 of the CDCA,
this Court is the most appropriate Court to determine the
City's request.

The City has indicated that it does not consent
to a final determination of those proceedings by the
bankruptcy judge. City Mem. in Supp. at 22. Moreover, as
noted by this Court in In re Houbigant, 185 B.R. at 686,
even if this Court had found the Northwest proceeding to be
core, such a determination would not be dispositive of the
motion to withdraw. Questions of efficient use of

judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors bear on the determination of whether it is appropriate to withdraw the reference. See Orion, 4 F.3d at 1101; Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt., Inc.), No. 02 Civ. 1736 (NRB), 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002) ("[E]ven assuming that the Andersen adversary proceeding is technically a core proceeding, we find that the other factors to be considered favor the discretionary withdrawal of the adversary proceeding"); Judge v. Ridley & Schweigert (In re Leedy Mortgage Co., Inc.), 62 B.R. 303 (E.D. Pa. 1986) (granting motion to withdraw reference as to core adversary proceeding due to nature of proceeding for breach of contract and negligence, and transferring venue from Pennsylvania to Alabama, where defendants' alleged misconduct occurred); Mishkin, 220 B.R. at 800 ("[T]he critical question is efficiency and uniformity.").

The Northwest adversary proceeding raises similar issues of contractual interpretation to those in the California Action, arising out of similar contractual language, and is part of a larger conflict between the City and the air carriers at LAX. The provisions of the long-

term leases at issue and the context in which the leases were negotiated will be before Judge Pregerson in the California Action.

Withdrawal of this non-core proceeding is appropriate.

## The Motion to Transfer is Granted

Transfer of venue for non-core proceedings is governed by 28 U.S.C. § 1404(a).[1] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a).

---

[1] Fed. R. Bankr. P. 7087 and 28 U.S.C. § 1412 govern transfers of core proceedings. Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Courts have construed the criteria under Sections 1404(a) and 1412 to be substantially similar. See Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y. 2004); Couri v. Fisher (In re JCC Capital Corp.), 147 B.R. 349, 356 (Bankr. S.D.N.Y. 1992) (citation omitted).

The decision to transfer venue is within the discretion of the court based on "an individualized, case-by-case consideration of convenience and fairness." Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). However, "the party seeking venue transfer bears the significant burden of making a clear and convincing showing that a matter should be transferred." Enron Corp. v. Dynegy, Inc. (In re Enron Corp.), No. 01-3626 (AJG), 2002 WL 32153911, at *3 (Bankr. S.D.N.Y. Apr. 12, 2002) (citing Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 183 (S.D.N.Y. 1995)).

In assessing whether a transfer is appropriate, courts have considered: (1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the location, convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of court with the applicable law; and (8) the interests of justice, including the interests of trial efficiency. Heyman, 306 B.R. 746, 749-50. See also Enron Corp. v.

Aurora (In re Enron Corp.), 317 B.R. 629, 638-39 (Bankr. S.D.N.Y. 2004) (citing Enron Corp. v. Dynegy, Inc. (In re Enron Corp.), 2002 WL 32153911, at *3-4; McCrory Corp. v. 99 Cents Only Stores (In re McCrory Corp.), 160 B.R. 502, 507 (Bankr. S.D.N.Y. 1993); JCC Capital, 147 B.R. at 357.

Here, both the convenience of the parties and the interest of justice favor transfer of the Northwest Action to the CDCA.

The interest of the City in a transfer is evident. This dispute, which relates to the implementation of the LAX Master Plan, arose in Los Angeles, all of the City's witnesses and documents are located in Los Angeles, and the leases are governed by California law.

With regard to Northwest's interest in having the adversary proceedings determined in this district, neither this Court, nor the Bankruptcy Court, has previously considered the issues raised by the adversary proceedings or has had reason to become familiar with the facts underlying this dispute. Northwest has Los Angeles litigation counsel already actively participating in the California Action on behalf of other Long-Term Tenants.

Northwest has asserted that "the Bankruptcy Court
is familiar with the lease termination issue (as well as
the M&O Costs/breach issue) because it was addressed by the
City in its two motions for relief from the automatic stay,
and briefed by Northwest in its objection to the City's
second lift stay motion." Northwest Opp. Mem. at 16.
However, the City's initial motion for relief from the stay
was not heard because the City withdrew it after counsel
for Northwest refused a request to continue the hearing.
The City's subsequent motion did not require the Bankruptcy
Court to analyze or interpret the Terminal 2 Lease, but
rather requested that the disputes be heard by a different
judge.  Transferring venue to the CDCA will not "duplicate
efforts or costs" already expended before the Bankruptcy
Court because the Bankruptcy Court has never had occasion
to analyze or interpret the Terminal 2 Lease.  Given the
preliminary state of the Northwest adversary proceeding,
there is no material delay that would result from
withdrawing the reference and transferring it to the CDCA.

According to the City, all or most of Northwest's
witnesses are located either in Eagan, Minnesota,
Northwest's headquarters, or Los Angeles, where LAX Two

maintains operations at LAX, and not New York. All of the City's historical documents related to the Terminal 2 Lease, covering the 22-year span since the inception of the lease, and potential witnesses in the Northwest Action are located in Los Angeles. No material witnesses for Northwest who are located in New York have been identified. Given the nature of Northwest's business, Northwest is well-positioned to transport those witnesses. The costs to LAWA of proceeding in New York appear to exceed those to Northwest of proceeding in Los Angeles.

The disputes raised by this adversary proceeding are unique to LAX and to the dispute between the City and the passenger carriers at LAX as embodied in the DOT Action, in which Northwest is already participating, the California Action, which also arises out of the City's setting of the New M&O Rates, and the Northwest Action. It is assumed that Northwest will assume all of its outstanding passenger terminal leases with other airports. Thus, the uniformity of Northwest's bankruptcy administration will not be impeded if the Northwest proceeding is transferred to the CDCA.

Northwest has asserted that the DOT Action does not mirror any of the claims raised in the Northwest proceeding. Northwest Opp. Mem. at 17-18. However, until February 1, 2007, the airlines in Terminals 1 and 3 were obligated to pay the costs of maintaining their terminals based on the terms of their expired leases and are now obligated to pay the costs of maintaining and operating their terminals pursuant to the terms of a tariff adopted by LAWA in January 2007. The language in some of those now-expired leases is similar to the language disputed in the Northwest proceeding and is the legal basis for the City's imposition of the costs of maintaining and operating their terminals on the DOT plaintiffs on a retroactive basis.

Finally, because Northwest's reorganization plan has been confirmed by the Bankruptcy Court, any presumption in favor of maintaining the venue of the Northwest Action before the Bankruptcy Court is substantially weakened. See Mirant Corporation v. The Southern Co., 337 B.R. 107, 124

(N.D. Tex. 2006) ("Any such presumption [in favor of the venue of the bankruptcy case] in this case has been significantly weakened, if not entirely destroyed, by the circumstance that this now is post-confirmation litigation.").

## Conclusion

For the foregoing reasons, the City's motion to withdraw the reference and transfer the proceeding to the Central District of California is granted.

New York, N.Y.
February 20 , 2008

ROBERT W. SWEET
U.S.D.J.