UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
In re:

NORTHWEST AIRLINES CORPORATION, et al.,

Debtors.

------------------------------------X

NORTHWEST AIRLINES, INC.,

                 Plaintiff,

-against-

CITY OF LOS ANGELES; LOS ANGELES
WORLD AIRPORTS, a department of the
City of Los Angeles; and LOS ANGELES
BOARD of AIRPORT COMMISSIONERS, a
board of The City of Los Angeles,

                 Defendants.

------------------------------------X

Chapter 11 Case No.

05-17930 (ALG)

Jointly Administered

07 Civ. 2677

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/28/08

A P P E A R A N C E S:

**Attorneys for Debtors and Debtors-In-Possession**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
By:  Bruce R. Zirinsky, Esq.
     Gregory M. Petrick, Esq.
     David Leamon, Esq.
     1201 F Street N.W., Suite 1100
     Washington, DC 20004

**Attorneys for Defendants**

KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
By:  Marc S. Cohen, Esq.
     Ashleigh A. Danker, Esq.

**Sweet, D.J.,**

Plaintiff Northwest Airlines, Inc. ("Northwest") has moved for reconsideration, pursuant to Local Civil Rule 6.3, of the Court's Order of February 20, 2008, granting the motion by the City of Los Angeles (the "City") to withdraw the reference from the bankruptcy court and transfer the proceeding to the Central District of California ("CDCA"). In the alternative, Northwest seeks certification for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). For the reasons stated below, Plaintiff's motion is denied.

## I.  Prior Proceedings

Northwest Airlines Corporation ("Northwest") filed its petition in bankruptcy under Chapter 11 of the federal Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the Southern District of New York on September 14, 2005.

On August 14, 2006, the City filed a proof of claim in the Bankruptcy Court.

On March 23, 2007, Northwest filed its Complaint to

1

commence an adversary proceeding against the City, Department of Airports (also known as the "Los Angeles World Airports" or "LAWA"), and its Board of Airport Commissioners (the "BOAC") (herein referred to collectively as the "City" or "Defendants"), seeking declaratory and injunctive relief on the grounds that a lease between Northwest and LAWA is property of the estate and had been breached by the Defendants in violation of the automatic stay, that the acts of the Defendants with respect to the lease are voidable, and that the lease cannot be terminated or, if terminated early, is subject to a buy back provision.

On March 30, 2007, the City, LAWA, and the BOAC moved to withdraw the reference of the adversary proceeding and to transfer venue to the United States District Court for the Central District of California ("CDCA"). The motion was opposed by Northwest and was heard and marked fully submitted on May 9, 2007.

On February 20, 2008, the Court granted Defendants' motion to withdraw and to transfer the proceeding to the CDCA. In re Northwest Airlines Corp., 384 B.R. 51 (S.D.N.Y. 2008). On or about February 21, 2008, Northwest and the City entered into an interim settlement agreement providing for the dismissal of Count I of the Complaint ("Interim Settlement Agreement"). The

2

transfer Order was filed with the clerk's office on February 27, 2008. The clerk's office sent the file to the CDCA on March 6, 2008. Plaintiff filed this motion for reconsideration of the Court's Order, or, in the alternative, certification of an interlocutory appeal on March 10, 2008, and its motion was marked fully submitted on April 2, 2008. The CDCA acknowledged receipt of the file and provided March 19, 2008, as the date a case number was assigned to the transferred action.

**II. FACTS**

The parties' familiarity with the facts is assumed. In brief, the City is the owner of the Los Angeles International Airport ("LAX"). The City operates its airports, including LAX, through LAWA. LAWA is a financially independent, self-sustaining proprietary department of the City, governed by the seven-member BOAC. Members of the BOAC are appointed by the Mayor of Los Angeles and are subject to approval by the City Council.

The City is in the initial phases of implementing the LAX Master Plan (the "Master Plan"), a renovation and upgrading of LAX which involves redevelopment of the terminal area, enhancement of passenger and airport safety and security,

3

modernization of the runway and taxiway system, and improvements in access to the airport. It is expected to take several years to fully implement.

LAX is the primary commercial air transportation hub of the Los Angeles region and has nine passenger terminals. Terminal 5 is subject to a long-term lease, now held by Delta as a result of its merger with Western Air Lines, Inc. Terminal 2 is subject to a long-term lease held by LAX Two Corp. ("LAX Two"). Northwest is a member of LAX Two and, along with the other members of LAX Two, provides passenger arrivals and departures at Terminal 2.

On November 20, 2006, the BOAC formally approved a "New Leasing Policy" for LAX. Pursuant to the New Leasing Policy, the BOAC approved a new lease form with a five-year term (the "New Lease Form") for LAWA's airline tenants, including those at LAX, that allows LAWA to retain greater control over LAX's passenger terminals and gates on an airport-wide basis. The New Lease Form is effective as to all carriers signing new leases with the City for terminal space at LAX on or after February 1, 2007. As to carriers occupying terminal space on or after February 1, 2007, without the benefit of a lease, the BOAC approved a tariff that incorporates the provisions of the New

Lease Form, absent the commitment by the City to a five-year term.

On December 18, 2006, the BOAC passed Resolution No. 23169, which sought to recover the maintenance and operating costs of LAX (the "New M&O Rates"). The New M&O Rates are applicable to all nine passenger terminals and collectible from all aeronautical tenants. The New M&O Rates were imposed as of February 1, 2007, but effective retroactive to January 1, 2006.

The City is reviewing its long-term leases for termination opportunities and has decided to defease the tax-exempt bonds issued with respect to the Terminal 5 Lease and the Terminal 2 Lease, thereby causing the early termination of those leases. On January 8, 2007, the BOAC formally approved funding of an escrow by the City, subject to appropriate court approval, in an amount not to exceed $55 million, for the purpose of defeasing the bonds issued with respect to Delta's Terminal 5 Lease. At the same time, the BOAC also approved funding of escrows by the City, subject to court approval, in an amount not to exceed $99 million, for the purpose of defeasing the bonds issued with respect to LAX Two's Terminal 2 Lease. These escrows have been funded.

The City's actions to promote implementation of LAX's Master Plan through the BOAC Resolutions enacted in November and December 2006 and January 2007 gave rise to the various causes of action in the instant proceeding and in a similar proceeding before the Honorable Denny Chin with respect to withdrawal of the reference in the Delta bankruptcy, In re Delta Airlines, Inc., No. 07 Civ. 02649 (DC), 2007 WL 3166776 (S.D.N.Y. Oct. 30, 2007). The Delta bankruptcy action has been dismissed in its entirety. In re Delta Airlines, No. 07-1561 (Bankr. S.D.N.Y. Feb. 26, 2008).

Five entities hold long-term leases of passenger terminal space at LAX: Delta Air Lines, Inc. ("Delta"), LAX Two, American Airlines, Inc. ("American"), Continental Airlines, Inc. ("Continental"), and United Air Lines, Inc. ("UAL") (collectively, the "Long-Term Tenants"). The termination provisions of their respective long-term leases with the City are similar, although there are variations in the relevant language of the later-executed long-term leases.

As a result of the recent airport-wide changes involving the City's recovery of its actual costs of operating LAX made to facilitate implementation of the Master Plan, the City was involved in two complex litigation actions, one filed

in January 2007 in the United States District Court for the Central District of California (the "California Action") by three of the five Long-Term Tenants at LAX, and the other filed in February 2007 before the Department of Transportation (the "DOT Action") by air carriers without long-term leases. The California Action challenged the New M&O Rates based upon language contained in the plaintiffs' long-term leases that is similar to that in the Northwest lease. As a result of various settlement agreements, the California Action was dismissed on February 26, 2008. American Airlines, et al., v. City of Los Angeles, et al., No. CV-07-0461 (DDP) (C.D. Cal. Feb. 26, 2008).

### III. THE COURT LACKS JURISDICTION TO GRANT PLAINTIFF'S MOTION

Following the proper transfer of a case from one district to another pursuant to § 1404(a), the transferor court loses all jurisdiction over the case. See, e.g., Jones v. Infocure Corp., 310 F.3d 529, 533 (7th Cir. 2002) ("[A] district court relinquishes all jurisdiction over a case when it is transferred to another district court."). A transfer order alone is generally insufficient to divest the transferor court of jurisdiction; not until the case file has been physically transferred to the transferee district does the transferor court lose jurisdiction. See Fisher v. United Airlines, Inc., 218 F.

Supp. 223, 224 (S.D.N.Y. 1963) ("This Court does not lose jurisdiction until the actual transfer of the papers takes place."); accord Wilson-Cook Med., Inc. v. Wilson, 942 F.2d 247, 250 (4th Cir. 1991) ("The general rule . . . is that jurisdiction is not conveyed from the transferor court to the transferee court until the record is physically transferred to the transferee court."); 15 C. Wright et al., Federal Practice and Procedure § 3846 (3d ed. 2008) ("When a motion for transfer . . . has been granted, and the papers lodged with the clerk of the transferee court, it is well settled that the transferor court . . . loses all jurisdiction over the case and may not proceed further with regard to it.").

Some courts have articulated the rule more precisely. "[T]he transfer of a case from one district to another is not complete until the papers are physically *docketed* in the office of the receiving court." Wilson v. City of San Jose, 111 F.3d 688, 692 (9th Cir. 1997) (citing Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir. 1987), cert. denied, 485 U.S. 993 (1988)) (emphasis added); see also, Chrysler Credit Corp., v. Country Chrysler, Inc., 928 F.2d 1509, 1517 (10th Cir. 1991) ("The date the papers in the transferred case are docketed in the transferee court . . . forms the effective date that jurisdiction in the transferor court is terminated.").

In this district, Local Civil Rule 83.1 requires the clerk executing a transfer order to wait five days before mailing the original case file to the transferee clerk. The purpose of the rule is to provide "opportunity . . . [to] an aggrieved party to seek a stay of a transfer order" in the transferor court. In re Warrick, 70 F.3d 736, 739 (2d Cir. 1995); see also, In re Nine Mile Ltd., 673 F.2d 242, 243 (8th Cir. 1982) ("[P]hysical transfer of the file should be delayed for a period of time after entry of the transfer order so that review may be sought in the transferor circuit.").

Regardless of the effective date of the transfer, the transferor court only retains jurisdiction if the party seeking review acts to stay the transfer "prior to receipt of the action's papers by the clerk of the transferee court." In re Warrick, 70 F.3d at 739 (citing holding in Drabik v. Murphy, 246 F.2d 408 (2d Cir. 1957), that transferor court no longer has jurisdiction over motion for reargument on transfer issue where motion is filed before but returnable after papers are docketed in transferee court). Courts have granted exceptions to this rule in limited circumstances. See id. (retaining jurisdiction in transferor court in special circumstance where case file was physically transferred the same day transfer order was filed, giving the party no opportunity to seek review of the order); In

9

re Nine Mile Ltd., 673 F.2d 242 (same); see also Wilson, 111 F.3d 688 (allowing party to file notice of dismissal in transferor court prior to date of docketing to avoid situation where "plaintiff would have no forum in which to file").

In this case, Northwest filed its motion on March 10, 2008, almost two weeks after the Order was filed. The clerk's office waited more than the five days required by Rule 83.1 before sending the original case file to the CDCA on March 6, 2008. Given that Northwest failed to apply for a stay of the transfer during the six days that the case file remained in this District, jurisdiction over the action now rests solely in the CDCA. If Plaintiff seeks to return to this District, it may move for retransfer in the CDCA.

### IV. IF THIS COURT COULD PROPERLY EXERCISE JURISDICTION, NORTHWEST'S MOTION FOR RECONSIDERATION AND CERTIFICATION WOULD BE DENIED

#### A. Reconsideration

Northwest moves for reconsideration of the Court's February 20th Order transferring the case to the CDCA pursuant to Local Civil Rule 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Rafter v. Liddle, No. 07-2282-cv, 2008 WL 3842709, at *1 (2d Cir. Aug. 13, 2008) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); see also Borochoff v. GlaxoSmithKline PLC, 07 Civ. 5574 (LLS), 2008 WL 3466400, at *1 (S.D.N.Y. Aug. 12, 2008) ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992))).

In its motion for reargument, a party "may not advance new facts, issues or arguments not previously presented to the court." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., No. 86 Civ. 6447 (JMC), 1989 WL 162315, at *4 (S.D.N.Y. Aug. 4, 1989). Rather, a party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Great Am. Ins. Co. v. J. Aron & Co., Inc., No. 94 Civ. 4420 (RWS), 1996 WL 14455, at *2 (S.D.N.Y. Jan. 16, 1996) (listing cases).

Neither the Interim Settlement Agreement nor the subsequent dismissal of the California Action provides sufficient grounds for reconsideration of the Court's Order. Plaintiff argues that reconsideration is appropriate because the terms of the Interim Settlement Agreement present new facts which significantly alter the "factual basis upon which the Transfer Motion was brought." Pl. Mem. at 1. However, given that both parties were aware of the motion pending before this Court while engaged in settlement discussions, any agreement between them is not properly considered "new evidence." If Plaintiff wanted the Court to consider a settlement agreement, it should have given the Court notice of a potential settlement before the Order was issued, rather than wait until several days after the transfer Order was filed.

Similarly, the dismissal of the California Action on February 26, 2008, does not provide grounds for reconsideration. In its opinion, this Court held that "both the convenience of the parties and interest of justice favor transfer" to the CDCA. In re Northwest Airlines Corp., 384 B.R. at 60. This determination was based on many factors, and the dismissal of the California Action does not alter the Court's analysis. Because Northwest fails to point to any facts or law that the

12

Court overlooked, the motion for reconsideration would be denied.

B.  **Certification**

In the alternative, Northwest moves for certification for interlocutory appeal of the Court's Order. The requirements for interlocutory review are governed by 28 U.S.C. § 1292(b). Section 1292 grants the district court discretion to issue interlocutory orders presenting "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion" and where "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). However, certification is only appropriate where "exceptional circumstances . . . justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)). It "is not intended as a vehicle to provide early review of difficult rulings in hard cases." In re Citigroup Pension Plan ERISA Litig., No. 05 Civ. 5296 (SAS), 2007 WL 1074912, at *2 (S.D.N.Y.

Apr. 4, 2007) (quoting In re Levine, No. 03 Civ. 7146 (NRB), 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004)).

The criteria for certifying a question under § 1292(b) "are conjunctive, not disjunctive. 'The federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court.'" Ahrenholz v. Bd. of Trs. of the Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000) (quoting Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991)); see also 19 James Wm. Moore, et al., Moore's Federal Practice, § 203.31[1] (3d ed. 2008) ("[I]n practice the courts treat the statutory criteria as a unitary requirement, and the decisions granting and discussing interlocutory appeals under 28 U.S.C. § 1292(b) uniformly cite all three of the elements as being present in any particular case.").

Northwest fails to meet the requirements for certification. Specifically, Northwest argues that the Court's finding that the adversary proceeding is a non-core proceeding is appropriate for interlocutory appeal under § 1292(b). However, the Court's opinion is explicit that the core/non-core distinction is only one of several factors to be considered in

determining whether withdrawal from the bankruptcy court is appropriate. In re Northwest Airlines Corp., 384 B.R. at 56. ("Each of the potential factors may have substantial importance in a given case, but none is dispositive."). To satisfy the "controlling" prong of the certification test, Northwest must demonstrate that "reversal of the district court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." In re Citigroup Pension Plan ERISA Litig., 2007 WL 1074912, at *2. Northwest has failed to show that resolution of the core/non-core issue by the Court of Appeals would change the result of the Court's Order. Finally, it is difficult to imagine how certification would "materially advance the ultimate termination" of this litigation, jurisdiction over which now lies solely in another district.

For the reasons set forth above, Plaintiff's motion for reconsideration, or in the alternative, for certification of a question for immediate appeal, would also be denied.

It is so ordered.

**New York, NY**

October 27, 2008

ROBERT W. SWEET
U.S.D.J.